UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXYS C. HAWKINS,

                Plaintiff,           Civil Action No. 16-10316
                                            Honorable Matthew F. Leitman
v.                                          Magistrate Judge David R. Grand

DETROIT PUBLIC SCHOOLS, *et al.*,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [23]**

On February 15, 2013, plaintiff Alexys C. Hawkins ("Hawkins") was a student at the Detroit School of the Arts, when she was allegedly involved in two separate altercations with defendants Cheyenne Brown, Tamika Lance, Jocelyn White, and George Harris, who were Detroit Public Schools Police Department ("DPSPD") police officers (collectively, the "Officers"). Hawkins was arrested and charged in the Wayne County Circuit Court Family Division-Juvenile Section, with two counts[1] of violating MCL 750.81d(1), assaulting, battering, wounding, resisting, obstructing, and opposing or endangering a police officer who she knew or had reason to know was performing his or her duties. (Doc. #23-1). At the conclusion of a September 2013 bench trial before the Honorable Christopher D. Dingell, Hawkins was found guilty on both counts, and the petition against her was dismissed with a warning pursuant to MCL 712A.18(1)(a). (Docs. #23-1 at 2, 5; #23-5).[2]

_____

[1] The first count was with respect to Officer Lance, while the second was with respect to Officer Harris. (Doc. #23-1).

[2] Although the petition was "dismissed," this dismissal was part of the "disposition" phase of the juvenile proceeding; it does not disturb the finding of guilt during the "adjudication" phase. MCR 3.943.

On January 29, 2016, Hawkins filed this civil action against the Officers and defendant Detroit Public Schools ("DPS") (collectively, "Defendants"), asserting violations of her constitutional rights under 42 U.S.C. § 1983 (excessive force and supervisory liability), as well as various state law claims (assault and battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and abuse of process) in connection with the events in question. All pretrial matters were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1). (Doc. #29). Presently before the Court is Defendants' motion for summary judgment, in which they argue Hawkins' excessive force claims are barred by *Heck v. Humphry*, 512 U.S. 477 (1994), that the Officers are entitled to qualified immunity, and that the claims against DPS fail as a matter of law. (Doc. #23). The motion was fully briefed by the parties (Docs. #28, #30), and on November 17, 2016, the Court heard oral argument.[3] For the reasons discussed below, the Court recommends granting in part and denying in part Defendants' motion.

## I.    BACKGROUND

Hawkins' complaint relates to incidents that occurred on February 15, 2013, at the Detroit School of Art's "Grammy Night." Hawkins alleges that shortly after she arrived, fights broke out between various male students, and that all students were ordered to leave the premises. (Doc. #1 at ¶ 27). Rather than leaving, however, Hawkins called her mother, Paris Thurman, who, in light of it being a cold winter night, instructed Hawkins to remain in the building until she arrived. (*Id.* at ¶¶ 35-36). Officer Brown then told Hawkins to leave. (*Id.* at ¶ 40). Hawkins alleges that she attempted to explain her mother's instructions to Brown, but that Brown, along with Officers Lance and White then pinned her up against a wall. (*Id.* at ¶¶ 43-

---

[3] At the conclusion of the hearing, the parties agreed to attempt to mediate the matter, and asked the Court to withhold ruling on pending motions while they pursued those efforts. Despite the parties' substantial efforts to reach a settlement, on April 14, 2017, counsel jointly advised the Court that those efforts were unsuccessful.

45). She further alleges that these three defendant police officers then hit and punched her; swung her to the ground and dragged her by her hair; kicked her in the head, neck, and back; called her "a bitch"; ripped and pulled her dress (exposing her breast); and pushed her out the door and down the school's stairs. (*Id.* at ¶¶ 46, 48-52, 54). Hawkins alleges that this attack occurred while Thurman remained on the line, and that Thurman overheard the altercation without realizing the defendant Officers were involved. (*Id.* at ¶ 53).

About 10-15 minutes later, Hawkins's uncle arrived, and Hawkins waited in his car until Thurman arrived. When Thurman arrived, she first spoke with Officers Brown, Lance and White, again, not realizing it was they who Hawkins claimed had assaulted her. (*Id.* at ¶¶ 61-62). Thurman then got Hawkins and returned to talk further with defendants Brown, Lance and White. (*Id.* at ¶ 64). Allegedly, it was during the ensuing conversation that Thurman learned of Hawkins' allegations against those officers. (*Id.* at ¶ 66). Thurman indicated that she planned to file a police report, and the three officers then huddled. (*Id.* at ¶¶ 67-68). Hawkins alleges that "[a]fter the huddle, DPSPD officer Defendant George Harris approached [Hawkins], and without <u>any</u> provocation grabbed [her] by both of her arms; slammed her to the ground; and banged her head against the ground." (*Id.* at ¶ 69) (emphasis in original). Hawkins was arrested and charged in the Wayne County Circuit Court Family Division-Juvenile Section, with two counts of violating MCL 750.81d(1), assaulting/resisting/obstructing Officers Lance and Harris, knowing they were performing their duties at the time. (Doc. #23-1).

Hawkins and witnesses she called at the trial gave testimony largely consistent with the version of events alleged by Hawkins in her complaint. The prosecution, however, presented testimony from the involved officers which described a different version of the events.

Officer Lance testified that she was called out to the school due to the fights that had

broken out. (Doc. #23-3 at 4). When she arrived, there were "a ton of kids just everywhere running. It was just out of control when I got there." (*Id.*). While assisting other officers at the front door to clear out the building, Lance saw Officers Cooper, Hughes and Brown were "trying to get Miss Hawkins to leave the building." (*Id.* at 5). She heard Hawkins yelling and refusing to leave, and went to help remove her. (*Id.* at 5-6). Lance testified that Hawkins did not comply, and that when she went to grab Hawkins, Hawkins responded by punching her in the face. (*Id.* at 6). Lance testified that she was going to arrest Hawkins, but that Hawkins "got away from [her] some kind of way." (*Id.* at 7). After the Officers went outside and were approached by Thurman, Lance pointed Hawkins out to Officer Harris, telling him that she "was the young lady who punched me in my face." (*Id.* at 8). Harris then went to arrest Hawkins. (*Id.*). Lance testified that "Miss Hawkins went wild again. She was swinging, and he had one cuff on her arm and she was swinging so hard he had to take her to the ground in order to gain control of her because that's how irate an[d] [sic] belligerent she was." (Doc. #28-5 at 19).

Officer Harris testified that he was responding to a request for assistance from other officers who had been at the school when the fight broke out. (Doc. #23-4 at 3). Officer Harris testified that upon arriving on the scene, he observed Hawkins' mother acting "unruly," using profane language while she was "having a discussion" with one of the sergeants on the scene. (*Id.*). Hawkins was there, too, and acting unruly. (*Id.* at 3-4). At that time, Harris was advised that Hawkins had struck another officer. (*Id.* at 3). Harris testified that in light of that information, and the fact that "Hawkins was still continuing to be unruly and not calming down, [he] went to place her under arrest." (*Id.* at 3-4). Harris testified that he attempted to place Hawkins under arrest, but that she was not compliant. (*Id.* at 4). Harris then testified as follows as to what transpired next:

4

> I cuffed her right hand and she started screaming, "Why am I being arrested?" I said "Because you hit a police officer." She said, "She hit me too." I said, "You're going to jail." She kept trying to pull away and hold onto her mother, and she was swinging around, so in order not to hurt her, I took her down to the ground and handcuffed her, picked her back up and walked her to my car.

(*Id.*). Harris also testified that as he was attempting to arrest Hawkins, "she was swinging and flailing her arms around," though she did not actually strike him. (*Id.*).

At the conclusion of her bench trial, Judge Dingell found Hawkins guilty on both counts, finding as follows:

> [Hawkins] is charged with the violation of law of assaulting, resisting, obstructing, opposing two different police officers, Tamika Lance and George Harris, who were performing their duties. To prove this, the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that [Hawkins] assaulted, battered, resisted, opposed these police officers. Obstruct includes the use or threatened use of physical interference or force, or a knowing failure to comply with a lawful command. [Hawkins] must have actually resisted by what she did; said. But physical violence is not necessary.
>
> Second, that the juvenile knew or had reason to know that the person assaulted and battered, obstructed, resisted, opposed was a police officer performing his and her duties at the time.
>
> . . . I can find that the police officers indicated that these were police. They indicated to Alexys that she had to leave the building.
>
> She had been told by her mother not to. She chose to not leave the building. And the police under these circumstances do have the power to push someone. If that doesn't work, then they try something more vigorous. And things escalated from there.
>
> Alexys felt she was being wronged. She was doing what her mother told her to, but that happens to be a violation of the law.
>
> Alexys goes out the door. I would not be surprised at all if she fell down the steps. I believe she met with her uncle. I believe her mother was probably very upset.

I had some testimony from a few defense witnesses that she was relatively composed. I don't believe that for a minute. I have rather time [sic] control of my anger. And yet if my daughter was in this kind of situation, I would be irate.

I believe Alexys is irate. I believe Alexys feels that she was wronged. But the police officers had the power, including and indeed the duty to do what they were doing.

\*\*\*

Alexys, you're not a bad girl. I think you're a good girl. I think you're going to become a fine person, but that you are guilty on both of these charges.

And the strongest evidence of that is your own words up here on the stand. You felt that there is some exception in the law when your mother tells you not to do what the police are telling you to do. It's not there.

(Doc. #23-5 at 2-5). Judge Dingell then immediately entered a sanction of "warn and dismiss," and closed the petition against Hawkins. (*Id.* at 5).

Hawkins then filed this action against the Defendants, alleging violations of her constitutional rights (excessive force and supervisory liability) and various state law claims (assault and battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and abuse of process). (Doc. #1). Defendants have filed a motion for summary judgment, arguing that Hawkins' excessive force claims are barred by *Heck*, that the Officers are entitled to qualified immunity, and that Hawkins' claims against DPS fail as a matter of law. (Doc. #23).

## II.     ANALYSIS

### a.     *Heck* Does Not Bar Hawkins' Excessive Force Claim

#### i. The *Heck* Doctrine

In *Heck*, the United States Supreme Court held:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness

> would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254.

*Heck*, 512 U.S. at 486-87.

Defendants argue that under this *Heck* doctrine, "a claim of excessive force under 42 U.S.C. 1983 is barred if success on that claim would necessarily call into question [Hawkins'] state criminal conviction which arose from the same underlying facts." (Doc. #23 at 16). While this accurately states the law,[4] Defendants' ultimate argument – that Hawkins' excessive force claim is barred by *Heck* – fails because the absence of excessive force is not an element of the crime for which she was convicted, and therefore, her success on the excessive force claim would not *necessarily* call her conviction into question.

### ii.     The Absence of Excessive Force is Not an Element of MCL 750.81d(1)

The Sixth Circuit recently explained that there are "two circumstances under which an excessive force claim might conflict with a conviction. 'The first is when the criminal provision makes the lack of excessive force an element of the crime.' 'The second is when excessive force is an affirmative defense to the crime ...' In each of these circumstances, the § 1983 suit would 'seek[ ] a determination of a fact that, if true, would have precluded the conviction.'" *Parvin v. Campbell*, 641 F. App'x 446, 449 (6th Cir. 2016) (internal citations omitted). Thus, the Court must determine whether, at the time Hawkins was convicted of violating MCL 750.81d(1), that crime had as an element the lack of excessive force and/or whether the use of excessive force

---

[4] *See Parvin v. Campbell*, 641 F. App'x 446, 449 (6th Cir. 2016) (quoting *Heck*, 512 U.S. at 487) ("It is well settled under *Heck* that when an individual [who has been convicted of resisting arrest] brings a § 1983 claim against the arresting officer, 'the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.' [] If so, the [excessive force] claim is barred unless he proves that his 'conviction or sentence has been reversed . . .'").

was an affirmative defense. For the reasons that follow, both questions must be answered in the negative.

The Court begins by noting that the statute in question – MCL 750.81d(1) – makes no mention whatsoever of "excessive force." Instead, it provides, in relevant part: "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both." MCL 750.81d(1). Arguably, the statute's failure to include the absence of excessive force as an element of the crime should end the analysis because unambiguous statutes must be strictly construed so as not to read into them elements which are not expressly included. *See People v. Davis*, 468 Mich. 77, 79 (2003) ("If the [criminal statute's] language is clear and unambiguous, 'no further construction is necessary or allowed to expand what the Legislature clearly intended to cover.'") (quoting *People v. Pasha*, 466 Mich. 378, 382 (2002)). But MCL 750.81d(1)'s legislative history, and the judicial decisions which have followed, preclude such a truncated analysis.

Prior to MCL 750.81d(1)'s enactment, Michigan had a similar "resisting arrest" statute, MCL 750.479, which also did not include the absence of excessive force as an element. However, unlike MCL 750.81d(1), MCL 750.479 contained a "lawfulness" requirement; the statute provided, in relevant part, "Any person who shall knowingly and willfully ... obstruct, resist, oppose, assault, beat or wound ... any person or persons authorized by law to maintain and preserve the peace, ***in their lawful acts***, attempts and efforts to maintain, preserve and keep the peace shall be guilty of a misdemeanor...." MCL 750.479 (emphasis added). Again, when MCL 750.81d(1) was enacted, it did not refer to the "lawfulness" of the officer's underlying conduct.

The difference between the two statutes came into focus in *People v. Ventura*, 262 Mich. App. 370, 374 (2004). *Ventura* involved a minor (Ventura) who was confronted at his home by a police officer investigating a complaint of a stolen handgun. The officer spoke with Ventura, smelled alcohol on his breath and advised him he was under arrest for Minor in Possession of Alcohol. Ventura physically resisted the officer's attempt to arrest him, and was ultimately apprehended. He was then charged with both the alcohol offense and violating MCL 750.81d(1) for "assaulting, resisting, and obstructing a police officer." Ventura moved to dismiss the charges, arguing that the officer's initial decision to arrest him lacked probable cause, and was therefore not a "lawful" arrest. The trial judge agreed and dismissed the charges against Ventura, reasoning:

> …what might be in his stomach would not be a valid reason for arresting for possession of alcohol and so I'm disregarding that as the basis for the arrest…I know that under our new statute [i.e., MCL 750.81d(1)] we don't have definitive definitions from the appellate courts. Under the old statute [i.e., MCL 750.479] there was the right to resist an illegal arrest. I construe a reasonable interpretation of the current statute to prohibit—to allow an illegal arrest in someone's cutilidge [sic] and that's what took place here. I'm satisfied that the motion to quash in this case should be granted.

*Ventura*, 262 Mich. App. at 373.

In other words, although MCL 750.81d(1) did not include as an element of the offense that the officer's underlying conduct was "lawful," the trial judge read such a requirement into the statute. The Michigan Court of Appeals reversed, essentially holding that the statute must be strictly construed:

> The language of MCL 750.81d is abundantly clear and states only that an individual who resists a person the individual knows or has reason to know is performing his duties is guilty of a felony. MCL 750.81d. Because the language of the statute is clear and unambiguous, further construction is neither necessary nor permitted, and we decline to "'expand what the Legislature clearly intended to cover'" and "read in" a lawfulness requirement…A person may not use force to resist an arrest

> made by one he knows or has reason to know is performing his duties
> regardless of whether the arrest is illegal when charged pursuant to MCL
> 750.81d. Because MCL 750.81d does not require a showing that
> defendant's arrest was lawful, we reverse.

*Id.* at 375-78 (citations omitted).

*Ventura's* holding was relatively short-lived. In *People v. Moreno*, 491 Mich. 38, 814 N.W.2d 624 (2012), the Michigan Supreme Court considered "whether [a] defendant was properly charged with resisting and obstructing a police officer under MCL 750.81d after [he] struggled with officers who had entered his home unlawfully." *Moreno*, 491 Mich. at 40-41. In *Moreno*, officers attempted to enter Moreno's home without a warrant and a physical struggle ensued. Eventually, Moreno was apprehended and charged with, among other crimes, assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Moreno moved to dismiss that charge on the ground that his alleged assaultive conduct was precipitated by the officers' unlawful entry into his home. Relying on *Ventura*, both the trial court and Michigan Court of Appeals found that the lawfulness of the officers' entry into Moreno's home was not an element of the resisting arrest charge, and thus refused to dismiss the charges against Moreno.

The Michigan Supreme Court reversed, expressly overturning *Ventura* in the process. While the court recognized that MCL 750.81d did not contain a "lawfulness" element, it held that there existed a "common-law right to resist an unlawful arrest," which was not abrogated by the new statute's enactment. *Id.* at 626-27, 629. Thus, it concluded, "the prosecution [when charging MCL 750.81d(1)] must establish that the officers' actions were lawful." *Id.* at 631.

Thus, both *Ventura* and *Moreno* were concerned only with an individual's right to resist an attempt to arrest him which was unlawful; neither considered whether the presence of excessive force during an ensuing confrontation would invalidate the resisting arrest charge. Accordingly, the cases simply do not stand for the principle urged by Defendants that post-

*Moreno*, a conviction under MCL 750.81d(1) implies a factual determination that officers did not use excessive force in effectuating the arrest. As the Honorable Laurie J. Michelson recently explained:

> The Supreme Court has pointed out that in *Heck*, it "stress[ed] the importance of the term 'necessarily.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). So "[t]he mere fact that the conviction and the § 1983 claim arise from the same set of facts is irrelevant if the two are consistent with one another." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). With respect to excessive force, a conviction is inconsistent only if (1) "the criminal provision makes the lack of excessive force an element of the crime," *id.*, or (2) "excessive force is an affirmative defense to the crime [.]" *Id.*

*Johns v. Oakland Cty.*, No. 15-CV-12924, 2016 WL 4396065, at *2 (E.D. Mich. Aug. 18, 2016).

Recent decisions from Michigan state and federal courts support this conclusion. For instance, in *People v. Rolland*, No. 322788, 2015 WL 9258236, at *3 (Mich. Ct. App. Dec. 17, 2015) (emphasis added), the Michigan Court of Appeals rejected a criminal defendant's argument that his "arrest [for resisting arrest] was rendered unlawful by the claimed use of excessive force on the part of the police [] [because] the common-law right to resist an unlawful arrest arises where ***the initial arrest itself*** was unlawful." In other words, *Rolland* recognized that MCL 750.81d's "lawfulness" requirement relates to whether the initial "arrest was valid based on probable cause," not whether the arresting officer used excessive force at any point during the subsequent altercation …." In *Cummings v. Lewis*, No. 303386, 2012 WL 2579678, at *2 n.3 (Mich. Ct. App. July 3, 2012), the Michigan Court of Appeals, albeit in *dicta*, reasoned that "*Moreno* does not stand for the proposition that excessive force is an affirmative defense to resisting a lawful arrest. Rather it stands for the rule that MCL 750.81d did not abrogate the common-law right to resist unlawful arrests and unlawful entries." And in *People v. Vandenberg*, 307 Mich. App. 57, 69 (2014), the Michigan Court of Appeals held, "[f]or an arrest to be lawful, the police officer making the arrest must have probable cause . . . ."

Recent Eastern District of Michigan cases have applied a similar analysis. For instance, in *Nelson v. Green Oak Twp.*, No. 14-10502, 2016 WL 233100, at *15 (E.D. Mich. Jan. 20, 2016), the Honorable Paul Borman wrote, "Michigan courts define 'lawfulness' in terms of probable cause. 'For an arrest to be lawful, the police officer making the arrest must have probable cause ….'" (citations omitted). Thus, *Nelson* held, "Michigan courts would not find that *Moreno* compels the conclusion that a lack of excessive force is now an element of the crime of resisting under the Michigan statute. Accordingly, success on Plaintiff's § 1983 claim for excessive force would not necessarily imply the invalidity of her conviction for resisting arrest." *Id.* at *19. Similarly, the *Johns* court concluded, "a Michigan police officer can, in the process of making a lawful arrest, use excessive force. In other words, the use of excessive force during or to effectuate an otherwise lawful arrest does not render the arrest unlawful. This in turn means that a conviction under the resisting-arrest statute does not trigger *Heck's* bar to a § 1983 excessive-force suit." *Johns*, 2016 WL 4396065, at *5.[5]

Careful examination of the cases cited by Defendants do not change this analysis. For instance, Defendants cite *Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005), for the proposition that "[a]llegations of excessive force that are 'inextricably intertwined' with a conviction are barred by Heck." (Doc. #23 at 16). In *Cummings*, officers had come to Cummings' home looking for someone else. They had no warrant, but got Cummings to come to

---

[5] The *Johns* court also noted that "other circuits have reached similar results in the context of other states' resisting-arrest statutes." *Id.* (citing *Colbert v. City of Monticello, Ark.*, 775 F.3d 1006, 1008 (8th Cir. 2014) (collecting cases); *Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008) ("It is conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive in effectuating a lawful arrest."); *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999) ("The state court's finding that Martinez resisted a lawful arrest ... may coexist with a finding that the police officers used excessive force to subdue him. In other words, a jury could find that the police officers effectuated a lawful arrest of Martinez in an unlawful manner.")).

the front door and open it. An officer then put his foot in the door, but Cummings refused entry. Officers said they smelled marijuana, and Cummings tried to close the door. Officers then pushed their way into the house and attempted to arrest Cummings, who struggled and resisted. Cummings was ultimately arrested and charged with: (1) assaulting a police officer; (2) resisting arrest; (3) drug offenses; and (4) obstruction. After some intervening legal rulings in Cummings' favor, he pled guilty to assaulting one of the officers. Cummings then filed a Section 1983 action alleging, among other claims, that the officers had subjected him to excessive force. The Sixth Circuit upheld the dismissal of Cummings' excessive force claim stating, "success on Cummings' excessive force claim would necessarily imply the invalidity of his state assault conviction. The struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined. Additionally, Cummings could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge." *Id.* at 682-83.

But *Cummings* is distinguishable from the instant case in important respects. First, *Cummings* involved Ohio law, which differs significantly from Michigan law. As the Sixth Circuit explained, "[u]nder Ohio law, Cummings was barred from raising the illegality of the entry into his home or the unreasonableness of the officers' initial seizure of his person as defenses to assault. The traditional common law rule allowing individuals to resist illegal arrests has been explicitly disregarded by the Ohio Supreme Court." *Id.* at 683. As discussed above, the *Moreno* court recently ruled that the opposite is true in Michigan. *See Moreno*, 491 Mich. at 626-27, 629 (holding that in Michigan there exists a "common-law right to resist an unlawful arrest"). Second, whereas in the *Cummings* case involving Ohio law, the Sixth Circuit found that

"Cummings could have raised excessive force as a defense to the assault charge,"[6] in the Michigan case by a different plaintiff with the same last name, the Michigan Court of Appeals wrote that "*Moreno* does not stand for the proposition that excessive force is an affirmative defense to resisting a lawful arrest" under Michigan law. *Cummings*, 2012 WL 2579678, at *2 n.3. Accordingly, it is not clear that the Sixth Circuit's reasoning regarding Cummings' excessive force claim under Ohio law would apply here.

Defendants' reliance on *Parvin v. Campbell*, 641 F. App'x 446, 449 (2016), is also misplaced. That case arose in Tennessee, and the Sixth Circuit explained that, "[u]nder Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force." Again, Michigan law is different because in Michigan an officer's use of excessive force is not a defense to an otherwise valid arrest.

Finally, it is worth noting that as long as the absence of excessive force is not an element of MCL 750.81d(1), adopting the Defendants' argument would be tantamount to holding that "once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006). Such a perverse position must be rejected.

For all of the foregoing reasons, the Court finds that the absence of excessive force was neither an element of the MCL 750.81d(1) charge of which Hawkins was convicted, nor an affirmative defense to that charge. Accordingly, Hawkins' success on her § 1983 excessive force claim would not necessarily call into question the validity of her conviction, and *Heck* does not

---

[6] The court apparently reached this conclusion because Ohio law "provides that an arrest is not lawful if the arresting officer uses excessive force." *Swiecicki v. Delgado*, 463 F.3d 489, 494 (6th Cir. 2006) (citing *White v. Ebie*, 1999 WL 775914, *1 (6th Cir. 1999)).

bar that claim.

**b.    Hawkins' Excessive Force Claim is Not Barred by Collateral Estoppel**

Defendants make a somewhat related argument that, based on Judge Dingell's factual findings, Hawkins is collaterally estopped from arguing that the Officers used excessive force during the incidents in question.  (Doc. #23 at 23).  While this argument has some appeal, on close inspection it, too, fails.  As this court recently explained, "[defensive] collateral estoppel precludes relitigation of issues or facts that have already been decided in a prior litigation," where: (1) an issue that is essential to the judgment in the second action was litigated and determined by a final judgment in the first action; and (2) the same or substantially related parties had the full opportunity to litigate the issue.  *Wallace v. JP Morgan Chase Bank, N.A.*, No. 13-13862, 2014 WL 4772029, at *5 (E.D. Mich. Sept. 24, 2014) (internal citations omitted).

Defendants cannot establish those elements here.  First, for the reasons noted above, the absence of excessive force was not an element of the crime at issue in Hawkins' state court trial.  Indeed, immediately before making his factual findings, Judge Dingell identified only the following elements of the crime:

> First, that the juvenile assaulted, battered, resisted, opposed these police officers.  Obstruct includes the use or threatened use of physical interference or force, or a knowing failure to comply with a lawful command.  The juvenile must have actually resisted . . . but physical violence is not necessary.

> Second, that the juvenile knew or had reason to know that the person assaulted and battered, obstructed, resisted, opposed, was a police officer performing his and her duties at the time.

(Doc. #23-5 at 3).

Thus, Judge Dingell did not indicate a belief that the issue of excessive force was before him, let alone that it was "essential to the judgment" he was being asked to reach.  But even looking deeper into Judge Dingell's factual findings, they are too vague to constitute a

conclusive finding that Hawkins was not subjected to excessive force during the incidents in question. The closest Judge Dingell came to making a statement that could be construed as addressing any claims of excessive force was when he stated, "And the police under these circumstances do have the power to push someone. If that doesn't work, then they try something more vigorous. And things escalated from there…Alexys goes out the door. I would not be surprised at all if she fell down the steps…I believe Alexys feels that she was wronged. But the police officers had the power, including and indeed the duty to do what they were doing." (*Id.* at 3-4).

While these comments by Judge Dingell certainly do not suggest he believed the Officers engaged in any wrongdoing during the incidents in question, particularly considering Hawkins' age and the fact that her initial wrongdoing, from the Officers' perspective, was failing to obey an order to leave the school, *see infra* at 17-19, they are simply too vague to constitute an affirmative factual finding by him that the Officers did not engage in any excessive force in their interactions with Hawkins. Somewhat relatedly, the Court notes that the unlawful conduct Judge Dingell found Hawkins to have committed is not entirely clear. Not only did Judge Dingell not make a finding that Hawkins actually struck any of the Officers, but he focused on the fact that she refused to leave the building when ordered to do so. (Doc. #23-5 at 3, 5) ("She was doing what her mother told her to, but that happens to be a violation of the law…. And the strongest evidence of [your guilt] is your own words up here on the stand. You felt there is some exception in the law when your mother tells you not to do what the police are telling you to do. It's not there."). For all of these reasons, Defendants' collateral estoppel argument fails.

### c. The Defendant Officers Are Not Entitled to Qualified Immunity

The Defendant Officers also argue that, "[e]ven if [Hawkins'] excessive force claim was

not barred by her conviction, the defendant officers are entitled to qualified immunity." (Doc. #23 at 22). Under the doctrine of qualified immunity, governmental officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Claims of qualified immunity are analyzed on a "fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene." *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011). Once the defense of qualified immunity is raised, the plaintiff bears the burden of showing that the defendants are not entitled to immunity. *See Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005).

Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). *See also Beaton v. City of Allen Park*, 2015 WL 3604951, at *10 (E.D. Mich. Jun. 8, 2015) ("Thus, to defeat [defendant's] assertion of qualified immunity, 'Plaintiff must show both that, viewing the evidence in the light most favorable to [him], a constitutional right was violated and that the right was clearly established at the time of the violation.'") (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). In conducting this inquiry, the court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, the Officers' qualified immunity argument rests entirely on their collateral estoppel

argument. Essentially, they contend that Judge Dingell already "considered the evidence on the issue of the force used by the Defendant Officers and determined that the 'police had the power, including and indeed the duty to do what they were doing.' This determination by the criminal court judge is entitled to collateral estoppel effect." (Doc. #23 at 22-23). However, as discussed above, Judge Dingell did not seem to believe that the issue of the force used by the Officers was "essential to the judgment," and his findings as to both the criminal conduct by Hawkins (which focused on her refusal to leave the building when ordered to do so, not on any physical altercation) and any particular force used by the Officers, were vague. Thus, the argument articulated by the Officers does not entitle them to qualified immunity.

The Court would reach the same conclusion under a full qualified immunity analysis. A person's "right to be free from excessive force is a clearly established Fourth Amendment right." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001). The "objective reasonableness" test described above requires consideration of the totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). This includes considering "(1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee." *Wysong v. City of Heath*, 260 F. App'x 848, 854 (6th Cir. 2008) (citing *Graham*, 490 U.S. at 394).

At least at this stage, where the plaintiff's allegations must be construed in a light most favorable to her, qualified immunity should be denied. During the events in question, Hawkins was a high school-aged girl attending a night-time school-sponsored event. While the Court takes into consideration that the initial interaction with Officers Brown, Lance and White

occurred because Hawkins failed to comply with their orders for her to depart the school (and while they were trying to get other students out of the building), Hawkins nevertheless alleges specific conduct by them which, if believed, could constitute "excessive force" under the above standards. For example, Hawkins alleges that Officer Brown "drug [her] by her hair down the school's hallway," which resulted in her "hair extensions [being] [] literally pulled from her scalp." (Doc. #1 at ¶ 48). She further alleges that Officers Brown, Lance and White then "swung [her] to the ground by her hair, beat, punched and kicked [her] in the head, neck and back." (*Id.* at ¶ 52). Hawkins alleges that while she was in the parking lot with her mother, Officer Harris "approached [her], and without <u>any</u> provocation grabbed [her] by both of her arms; slammed her to the ground; and banged her head against the ground." (*Id.* at ¶ 69) (emphasis in original).

Taking into account all of the foregoing, Hawkins has pled sufficient facts to overcome Defendants' request for qualified immunity. Accordingly, this aspect of their motion should be denied.

### d. DPS' Municipal Liability Arguments Lack Merit

DPS makes two two-sentence "arguments" as to why Hawkins' claims against it should be dismissed. First, it argues that as a municipality it cannot be liable "absent an underlying constitutional violation by its officers." (Doc. #23 at 24-25) (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004)). This argument is flawed because it is based on the premise that Hawkins' claims against the Officers must be dismissed, and this Court is recommending against that action at this time. Second, DPS argues that Hawkins' "state law torts against [DPS] will most certainly be dismissed based on governmental immunity. There is no intentional tort exception to governmental immunity." (Doc. #23 at 25) (citation omitted).

But this argument seems to contemplate some type of future motion which will more fully flesh out the facts and law that DPS believes entitles it to judgment as a matter of law. Hawkins did not address the issue in her response, and Defendants did not address it in their reply. Accordingly, DPS has not shown entitlement to any relief at this time. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("[I]ssues averted to in some perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Defendants' Motion for Summary Judgment **(Doc. #23)** be **DENIED**.


Dated: May 5, 2017                          s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991);

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to

E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 5, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
